IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, *ex. rel.* CFI Group USA, LLC and American Customer Satisfaction Index, LLC, §§§§ | **Complaint filed under seal pursuant to 31 USC § 3730(b)(2) and LR 5.3(a)** |
| Plaintiff, §§ | |
| | Civil Action: _____ |
| v. § | |
| § | (Jury Demand) |
| Verint Americas, Inc., d/b/a ForeSee Results and successor-in-interest to ForeSee Results, Inc., §§§ | |
| Defendant. | |

## <u>Original *Qui Tam* Complaint</u>

This is a *Qui Tam* action brought pursuant to the False Claims Act, 31 USC § 3729, *et. seq*., ("FCA") by Relator Plaintiffs, CFI Group USA, LLC ("CFI"), and American Customer Satisfaction Index, LLC ("ACSI LLC") in the name of the United States Government to recover penalties and damages from Verint Americas, Inc., as successor-in-interest to ForeSee Results Inc. (collectively, "Defendant" or "Foresee"), for violations of the FCA. As set forth in greater detail *infra*, since at least as early as December 8, 2013, ForeSee has falsely claimed to be affiliated with ACSI LLC and falsely claimed to apply proprietary ACSI methodology in the products and services it has offered to sell to the United States, resulting in contractual awards to ForeSee, submission of millions of dollars' worth of claims to the United States, and payment by the United States.

## <u>Summary of the Allegations</u>

1.      ACSI LLC is a company that, among other things, measures and benchmarks customer satisfaction for companies in the private sector, and citizen satisfaction for various federal agencies and departments.  Since its formation, ACSI LLC has developed and owns proprietary survey questions, survey methodology, and survey analytic methodology (collectively, "Proprietary ACSI Methodology"). ACSI LLC has continued development of new and improved versions of the Proprietary ACSI Methodology.

2.      The Proprietary ACSI Methodology is used to measure and benchmark customer and citizen satisfaction, and, by ForeSee's own admission, since 1999, has been "the gold standard of customer satisfaction for the Federal Government."

3.      Since 1999, the federal government has considered ACSI LLC's Proprietary ACSI Methodology to be the standard metric for measuring citizen satisfaction.

4.      ACSI LLC licenses U.S. Trademark Reg. No. 2122772, a plain text mark for "ACSI," and U.S. Trademark Reg. No. 2122752, a graphic mark incorporating "ACSI," from the University of Michigan (collectively the "Registered ACSI Marks"), and has authority to sublicense the use of the Registered ACSI Marks to others.

5.      ACSI has given CFI access to the Proprietary ACSI Methodology and granted a sublicense to CFI for the use of the Registered ACSI Marks in CFI's marketing and sales materials. CFI is the only company in the United States that has access to the Proprietary ACSI Methodology for measuring and benchmarking user experience with government websites and is the only company licensed to use the Registered ACSI Marks in its marketing and sales materials issued to the United States.

6.      By its own admission, "ForeSee Results, Inc. was founded in 2001 as part of an effort to adapt the so-called 'ACSI methodology' to websites and other digital technology." However, also by its own admission, "ForeSee initially utilized the ACSI Designations and the so-called 'ACSI methodology,' but later developed its own methodology. More particularly, within a few years of its formation, ForeSee developed and began to use its own ForeSee methodology."

7.      Further, ForeSee was previously licensed to use the Registered ACSI Marks, along with the unregistered text mark "American Customer Satisfaction Index" (collectively the "Licensed Marks") in its sales and marketing materials. However, also by its own admission, "In 2013, ForeSee terminated the ACSI-ForeSee License. This decision was made in significant part because the ForeSee brand had grown tremendously over time and the ACSI name and ACSI Designations no longer had value to ForeSee."

8.      Notwithstanding ForeSee's admitted abandonment of the Proprietary ACSI Methodology and its voluntary termination of the right to use the Licensed Marks since at least as early as December 8, 2013, ForeSee has falsely represented to the United States that it is affiliated with ACSI and applies Proprietary ACSI Methodology to measure and benchmark user satisfaction with government websites.

9.      As a direct consequence of its misrepresentations, ForeSee obtained contracts with the United States, submitted false claims within the meaning of the FCA, and was paid millions of dollars.

10.     ForeSee knew, within the meaning of the FCA, that the products and services it provided to the United States were not what it had represented and warranted.  As a result, the United States did not receive what it contracted to receive and for which it paid millions of dollars.

## The Parties

11.     CFI is a Michigan limited liability company having its principal place of business at 3916 Ranchero Drive, Ann Arbor, Michigan.

12.     ACSI LLC is a Michigan limited liability company having its principal place of business  at 625 Avis Drive, Ann Arbor, Michigan.

13.     Verint Americas Inc. ("Verint") is a Delaware corporation having its principal place of business at 800 North Point Parkway, Alpharetta, Georgia

30035. In 2018 Verint acquired ForeSee Results Inc., a Delaware corporation having its principal place of business in Ann Arbor, Michigan. In 2019 Verint and ForeSee Results Inc. merged, leaving Verint as the surviving corporation liable for the pre-acquisition acts and omissions of ForeSee Results Inc. Verint now does business under the assumed name "ForeSee Results" in Michigan.

14.    Verint has not yet registered as a foreign corporation with the Michigan Secretary of State, and as such, service may be made by sending a summons and a copy of the complaint by registered mail to Verint and to the Michigan Bureau of Commercial Services Corporate Division.

## Jurisdiction and Venue

15.    This Court has jurisdiction over the matter pursuant to 31 U.S.C. §3732(a). This Court's jurisdiction can also be found in 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1345 (United States as Plaintiff), and 31 U.S.C. §§3729-3733 (United States False Claims Act).

16.    This Court has personal jurisdiction over Verint because the wrongful acts forming the bases of the causes of action against it were committed by ForeSee Results Inc., which had its principal place of business in this District; because Verint continues to have a place of business in this District; and because Verint has purposefully availed itself of the privilege of conducting business in this District.

17.    Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.  Further, venue is proper in this Court under 31 U.S.C.A. § 3732(a) and 28 U.S.C. §1391(b)(3) because Verint is subject to this Court's personal jurisdiction.

## The False Claims Act

18.    Originally enacted in the 1860s to combat fraud against the Union Army during the Civil War, the FCA, 31 U.S.C. §§ 3729-3733, is the primary tool with which citizens of the United States combat false claims and fraud against the Government. The Supreme Court has held that the FCA's provisions must be construed broadly to reach "all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White,* 390 U.S. 228, 232 (1968).

19.    The FCA provides that a person is liable to the United States Government for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A).

20.    As amended by the Fraud Enforcement and Recovery Act of 2009 (FERA), the false statements provision of the FCA makes any person liable who

"knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

21.     The FCA also imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G).

22.     The FCA defines "knowingly" to mean that a person, with respect to information: "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information," and further provides that no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1).

23.     Specifically, FCA liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading. *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1995 (2016)

24.     The FCA provides that a person is liable to the United States Government for a "civil penalty of not less than $5,000 and not more than

$10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a)(1).

25.    Under FCA case law, each and every claim submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim. *See, e.g., United States ex rel. Campie v. Gilead Scis., Inc*., 862 F.3d 890, 902 (9th Cir. 2017), *cert. denied sub nom; Gilead Scis., Inc. v. U.S. ex rel. Campie*, 139 S. Ct. 783, 202 L. Ed. 2d 566 (2019).

### The GSA Multiple Award Schedule Program and FCG BPA Awards

26.    Executive agencies of the United States may procure products and services only by "full and open competition through the use of competitive procedures in accordance with the requirements of this division and the Federal Acquisition Regulation," unless they meet certain exceptions.  41 U.S.C. § 3301(a)(1).

27.    The competitive bidding process, and the negotiation of contractual terms, is a lengthy and costly process. In order to expedite the procurement process for executive agencies and contractors wishing to sell products and

services to executive agencies, the General Services Administration ("GSA"), through the Federal Acquisition Service, solicits, negotiates, awards, and administers Multiple Award Schedule ("MAS") contracts to procure products and services for federal agencies. 40 U.S.C. § 501(b), 48 C.F.R. § 8.402.

28.    Under the MAS program, the GSA negotiates the maximum prices and other contract terms that will apply to subsequent orders placed for all of the items that are covered by the MAS contract. Once those maximum prices are set, agencies can make purchases at those prices, or at even better prices, subject to those other contract terms. Each item is referred to by a Special Item Number (SIN). The list of products or services that are available for purchase under a particular MAS contract is referred to as the contract "schedule." The pre-negotiation of the terms of sale for a large number of products and services under the MAS program saves significant administrative costs for Government agencies ordering off of MAS contract schedules and for contractors wishing to sell products and services to the Government.

29.    Agencies placing orders under MAS contracts are considered to meet the requirements of full and open competition. 48 C.F.R. § 8.404(a). Contractors benefit from the MAS program because their products are more widely available to federal agencies, and because the program makes it easier for federal agencies to place orders.

30.    The Administrator of GSA establishes the procedures that govern the MAS program, including the requirements that contractors must follow in order to participate in the program. 40 U.S.C. §§ 121(c), 501(b)(2).   These rules and regulations are set forth in the Federal Acquisition Regulations ("FAR") and the General Services Administration Acquisition Regulations ("GSAR").

31.    GSA initiates the MAS process by publishing a contract solicitation. Interested contractors then submit responses to the solicitation to GSA. Any contractor that enters into an MAS contract with the United States Government must abide by 1) the obligations that are outlined in the Government's solicitation; 2) the FAR and GSAR clauses that are incorporated into the contract; 3) any additional requirements negotiated between the parties; and 4) any other general federal contracting requirements set forth in the applicable regulations.

32.    The MAS contract solicitation requires prospective contractors to provide GSA with extensive information about their commercial sales and practices. This information is provided in a "Commercial Sales Practice Format" ("CSP"). 48 C.F.R. § 515.408 (MAS Requests for Information); 48 C.F.R. § 515.408, Figure 515.4 (Instructions for the Commercial Sales Practices Format). GSA requires offerors to provide pricing information that is current, accurate, and complete. 48 C.F.R. § 515.408, Figure 515.4.

33.    The information contained in the CSP is material to a GSA Contracting Officer's decision to award an MAS contract. Contracting officers rely on the accuracy, truthfulness, and completeness of the information provided by the offeror regarding its commercial sales and discount practices in negotiating the terms of a MAS contract.

34.    MAS contracts require all schedule contractors to publish an "Authorized Federal Supply Schedule Pricelist" (pricelist).  The pricelist contains all supplies and services offered by a schedule contractor. 48 C.F.R. § 8.402.

35.    MAS contracts are generally identified by a three digit number. When awarded, a contract is provided an identifying number unique to the contractor.

36.    GSA offers federal agencies to acquire a full range of management and consulting services under MAS Contract 847 (Business Consulting Solutions).

37.    A Special Item Number ("SIN") identifies "a group of generically similar (but not identical) supplies or services that are intended to serve the same general purpose or function" that is on a contractor's pricelist. 48 C.F.R. § 8.401. The SIN indicates the category of product or service to be offered.

38.    Under MAS Contract 874, SIN 874-1 denotes Integrated Consulting Services, which includes survey services, using a variety of methodologies,

including survey planning, design, and development, survey administration, data validation and analysis, and reporting.

39.    Contractors are required to provide "full, accurate, and complete information" in its bids and in any attachments thereto. 48 C.F.R. § 52.214-4.

40.    Task or delivery orders under MAS contracts are placed by executive agencies directly with contractors such as ForeSee. 48 C.F.R. § 8.406-1. GSA is not generally involved in the ordering process when Government customers make purchases under a MAS contract.  Orders are to be placed in "accordance with the terms and conditions of the pricelists (*see* FAR § 8.402(b))." 48 C.F.R. § 8.406-1(c).

41.    Contractors are required to submit invoices before payment can be made. 48 C.F.R. § 52.213-2.  A Contractor is paid "on the basis of the invoice, which must state (a) the starting and ending dates of the subscription delivery, and (b) either that orders have been placed in effect for the addressees required, or that the orders will be placed in effect upon receipt of payment." *Id*.

## ForeSee Results Inc.'s Intentional Misrepresentations to the United States

42.    In the 1980s, Dr. Claes Fornell, the Donald C. Cook Professor of Business Administration at the Stephen M. Ross School of Business at the University of Michigan, researched and developed customer experience measurement techniques which resulted in the strategic economic indicator known

as the "Swedish Customer Satisfaction Barometer" (SCSB) and later in the economic indicator known as the "American Customer Satisfaction Index."

43.     Dr. Fornell has, quite literally, written the book on customer satisfaction ("The Satisfied Customer," St. Martin's Press, 2007), and peer-reviewed journal papers on the measurement of customer satisfaction, written by Dr. Fornell, Dr. Forrest V. Morgeson III (ACSI LLC Director of Research and Global CSI Manager), and Dr. Tomas Hult (ACSI LLC Global CSI Research Associate).

44.     Dr. Fornell and his colleagues began using his methodologies commercially, first as Anjoy Research Inc. (formed in 1988), later as CFI Group Inc. (formed in 1995), and then as CFI Group USA LLC (formed in 2001).

45.     In 2002, ForeSee entered into a 10-year license with the University of Michigan ("UM") allowing ForeSee to use the Registered ACSI Marks along with the unregistered text mark "American Customer Satisfaction Index."

46.     In 2008, UM made ACSI LLC the exclusive licensee of the Registered ACSI Marks, subject to the assignment of existing UM licenses, including the licenses previously granted to ForeSee and CFI.

47.     On November 25, 2009, ForeSee Results Inc. was awarded GSA MAS Contract Number GS-10F-0044W pursuant to MAS Contract 874.  The Contract Period was November 25, 2009 to November 24, 2019.  The SIN on

ForeSee's pricelist was 874-1, denoting the provision of Integrated Consulting Services.

48.   In 2012, ForeSee and ACSI LLC entered to a 10-year license of the Registered ACSI Marks along with the unregistered text mark "American Customer Satisfaction Index," subject to a right to terminate upon four-months prior notice.

49.   In 2013, ForeSee was acquired by Answers Corporation and voluntarily terminated its license with ACSI LLC, leaving CFI as the only company in the United States that can use the Registered Marks or claim to apply Proprietary ACSI Methodology in the public sector.

50.   Verint has confirmed the foregoing allegations regarding the conduct of ForeSee in its Complaint for Declaratory Judgment against the Regents of the University of Michigan (the "Georgia Lawsuit"), filed on or about June 25, 2019, in the U.S. District Court for the Northern District of Georgia, Atlanta Division, where it was assigned case number 1:19-cv-02892-JPB.   In particular, in the Georgia Lawsuit, Verint has admitted that:

a.   "ForeSee Results, Inc. was founded in 2001 as part of an effort to adapt the so-called 'ACSI methodology' to websites and other digital technology." ¶17.

b.   "ForeSee initially utilized the ACSI Designations and the so-called

'ACSI methodology,' but developed its own methodology. More particularly, within a few years of its formation, ForeSee developed and began to use its own ForeSee methodology." ¶19.

c.   "In the 2012-2013 timeframe, ForeSee made the decision to terminate the ACSI-ForeSee License. In 2013, ForeSee terminated the ACSI-ForeSee License. This decision was made in significant part because the ForeSee brand had grown tremendously over time and the ACSI name and ACSI Designations no longer had value to ForeSee." ¶31.

51.   Since 2010, CFI and ForeSee have competed for government contracts to measure user experience with government websites. More particularly, since 2010 CFI and ForeSee have both bid on and have been eligible to be awarded government contracts through two government-wide contracting agencies, the Government Services Administration ("GSA") and the Federal Consulting Group ("FCG").

52.   Through the GSA's Federal Acquisition Service 00CORP Professional Services Schedule, ForeSee has been awarded a Federal Supply Schedule Contract No. GS-10F-0044 (the "FSS Contract").

53.   The FCG, relying on the FSS Contract, awarded ForeSee a blanket purchase agreement (the "BPA") and/or an Indefinite Delivery Indefinite Quantity (the "IDIQ") contract.  The award was made in reliance upon on the description of

ForeSee's capabilities as reflected in its GSA 00CORP Professional Services Schedule (the "GSA Schedule").

54.     Both the FSS, the BPA and the IDIQ have allowed ForeSee to compete for and be awarded task orders and delivery orders by the multiple federal agencies.

55.     Although they were no longer affiliated, ForeSee continued to represent to the United States, and its agencies, through the FSS, BPA and IDIQ that its products were sponsored by or associated with ACSI LLC.

56.     Although it no longer applied Proprietary ACSI Methodology, ForeSee continued to represent to the United States that it did apply Proprietary ACSI Methodology.

57.     By way of example and not limitation, between the approximately five (5) year period from the termination of the license in 2013 through to at least the first several months of 2018, ForeSee's GSA Schedule, Contract No. GS-10F-0044W, SIN 874-1, expressly stated:

    a.     "Since 1999, the gold standard of customer satisfaction for the Federal Government has been the American Customer Satisfaction Index (ACSI). Government agencies use ForeSee's proprietary ACSI survey tools to meet Executive Order requirements to measure satisfaction with websites, social media, mobile sites and

applications, call centers, and physical locations."

b.     "ForeSee maintains a staff of highly trained Researchers for direct client support. Each customer has a single Research point of contact and all surveys are tailored to the subscribing entity while maintaining the integrity of the ACSI methodology."

c.     "Price is for unlimited number of users for 1 year. Single dedicated American Customer Satisfaction Index (ACSI) web or mobile measurement via online survey with account and analytical support from ForeSee staff. Enterprise survey serves as the base measurement which is replicated across multiple sites without variation. ACSI measurement questions and proprietary statistical model are used to analyze customer satisfaction and predict future behaviors such as choosing the website over a call center, recommend the site to other visitors, and have trust in the organization's transparency."

d.     "Satisfaction-focused research and analysis based on American Customer Satisfaction Survey (ACSI) survey and custom question responses, prepared by the client's Satisfaction Research Analyst."

e.     "Duplicate ACSI survey for each additional enterprise entity, either web or mobile."

f.     "Price is for 1 heuristic usability audit of defined area of site, app or

social media with accompanying review presentation via webex and teleconference. Area of audit is defined by client priorities and American Customer Satisfaction Survey (ACSI) data."

58. All representations made by ForeSee to the United States since at least December 8, 2013, that referenced ACSI LLC or its Proprietary ACSI Methodology were knowingly false.

59. After ForeSee stopped using Proprietary ACSI Methodology, ForeSee failed to inform the United States or any of the departments ForeSee contracted with that it no longer used ACSI Proprietary Methodology.

60. After ForeSee stopped using Proprietary ACSI Methodology, all representations it made to the United States in which it claimed to do so were knowingly false.

61. Having voluntarily terminated its relationship with ACSI LLC effective December 8, 2013, and having ceased use of Proprietary ACSI Methodology, ForeSee knew its representations to the United States were false.

62. When CFI indicates, in its GSA Schedule, that it will use the "American Customer Satisfaction Index (ACSI) methodology for measuring customer satisfaction," it carries with it the promise to use methodologies that are well-recognized in the industry as a mature and effective mechanism for the measurement of customer satisfaction.

63.     When governmental agencies, in considering the award of contracts based on ForeSee's GSA Schedule, read that ForeSee promises to deliver, for example, "[s]atisfaction-focused research and analysis based on American Customer Satisfaction Survey (ACSI) survey and custom question responses," those agencies have a reasonable expectation that ForeSee is using the mature and effective ACSI methodologies that have been the subject of years of academic and industry research, and not some alternative undisclosed methodology.

64.     Governmental agencies awarding contracts to ForeSee have therefore been harmed through the receipt of services based on alternative undisclosed methodologies instead of the use of the proven ACSI methodologies as promised by ForeSee.

### Contracts Awarded to ForeSee Results Inc. in Reliance Upon its Misrepresentations

65.     ForeSee BPA and MAS awards included multi-year engagements with Contracting Agencies, including without limitation Departmental Offices, Federal Acquisition Service, Bureau of the Fiscal Service, Office of the Assistant Secretary for Administration, National Aeronautics and Space Administration, Defense Security Service, Office of Policy, Management and Budget, United States Mint, and the U.S. Patent and Trademark Office.

66.     Prior to termination of its license with ACSI LLC, the United States awarded ForeSee multiple task order contracts under GSA MAS Contract Number

GS-10F-0044W, which represented an affiliation with ACSI LLC and represented that ForeSee would apply Proprietary ACSI Methodology in its Integrated Consulting Services.  Performance of some of these task orders extended beyond the termination of its affiliation with ACSI LLC and beyond the time in which ForeSee could apply Proprietary ACSI Methodology in its Integrated Consulting Services.  By way of example and not limitation, ForeSee was paid $68,000 under a GSA-based task order with the United States Department of Agriculture, which was not set to expire until 2015.

67.    After termination of its license with ACSI LLC and after it stopped using Proprietary ACSI Methodology, ForeSee was awarded multiple government task orders and delivery orders under GSA MAS Contract Number GS-10F-0044W, which falsely represented an affiliation with ACSI LLC and falsely represented that ForeSee would apply Proprietary ACSI Methodology in its Integrated Consulting Services.  By way of specific example and not limitation, in 2017 ForeSee bid on an FCG blanket purchase agreement valued at $41,200,000; FCG awarded the BPA to ForeSee based at least in part on the substance and merits of its GSA Schedule and pricelist offered under GSA MAS Contract Number GS-10F-0044W.

## **False Claims Submitted by ForeSee Results Inc.**

68.     Under 48 C.F.R. § 52.213-2, ForeSee was required to submit invoices for payment before payment could be made.

69.     Upon information and belief, the federal government paid ForeSee $6,702,980 in 2014, $6,444,647 in 2015, $7,346,958 in 2016, $7,718,119 in 2017, and $7,450,999 in 2018.  All of these payments were based at least in part upon ForeSee's misrepresentations and false claims made in its GSA Schedule.

70.     After termination of its license with ACSI LLC and after ForeSee stopped using Proprietary ACSI Methodology, under GSA MAS No. GS-10F-0044W, ForeSee was issued numerous task and delivery orders and BPA Call Orders on claims for payment, including, by way of specific example and not limitation:

   a.     BPA Call Award ID No. IND14PB00093, signed on January 23, 2014.  Contracting Agency: DEPARTMENTAL OFFICES. Contracting Office: NBC ACQUISITION SERVICES DIVISION. Action Obligation: $142,965.

   b.     BPA Call Order Award ID No. IND15PB00219, signed on May 8, 2015.  Contracting Agency: DEPARTMENTAL OFFICES. Contracting Office: NBC ACQUISITION SERVICES DIVISION. Action Obligation: $74,000.

c.  Delivery Order Award ID No. 1333BJ18F00285010, signed on May 14, 2018.  Contracting Agency: US PATENT AND TRADEMARK OFFICE. Contracting Office: DEPT OF COMMERCE PTO. Action Obligation: $160,720.

71. On April 10, 2017, ForeSee was awarded IND12PA00263IND17PB00182, a BPA call order under the Professional Services Schedule (PSS). The BPA call was funded by the Office of Policy Management and Budget (DOI - DO).  The amount was 100% funded and is 100% complete. The NAICS Category for the award is 541611 - Administrative Management and General Management Consulting Services. The PSC Category is R422 - Market Research and Public Opinion Services (includes telephone and field interviews, focus testing, and surveys).

72. By way of further specific example and not limitation, on July 21, 2016, ForeSee issued a claim for payment, designated as Invoice No. 16784, to the Department of Veterans Affairs for $20,000 under Contract Numbers: VA118-16-C-1135 and 40325.  Payment on the invoice was to be made "as normal."

73. The claims referenced above were false claims as defined under the FCA.

74. The false claims discussed above are representative examples of false claims that ForeSee knowingly submitted or caused to be submitted to government

agencies.  The claims are emblematic of the false claims ForeSee presented to contracting federal agencies and are products of the false scheme it perpetrated. The total number of false claims submitted by ForeSee are too voluminous to be included and described herein, however  upon information and belief, the total number of false claims submitted by ForeSee exceed two hundred claims.

## COUNT I
### Violation of the False Claims Act: False Claims
### 31 U.S.C. § 3729(a)(1)(A)

75.     Relators repeat and re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     In violation of  31 U.S.C. § 3729(a)(1)(A), ForeSee knowingly presented, or caused to be presented, for payment or approval, false and/or fraudulent claims (*i.e.,* invoices for payment for Integrated Consulting Services, SIN 874-1, under GSA MAS GS-10F-0044W) to the United States, which the United States paid.

77.     The United States paid the false and/or fraudulent claims because of ForeSee Results Inc.'s acts, omissions, and misrepresentations, and incurred damages as a result.

78.     ForeSee Results Inc. knew, within the meaning of the FCA, that its claims were false.

79.     As successor-in-interest to ForeSee Results Inc., Verint Americas Inc. is liable to the United States for all false claims submitted by ForeSee Results Inc.

## COUNT II
### Violation of the False Claims Act: False Statements
### 31 U.S.C. § 3729(a)(1)(B)

80.     Relators repeat and re-allege the allegations contained in the forgoing paragraphs as if fully set forth herein.

81.     In violation of 31 U.S.C. § 3729(a)(1)(B), ForeSee Results Inc. knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim (*i.e.,* representations made in GSA MAS GS-10F-0044W and invoices for payment for Integrated Consulting Services, SIN 874-1) to induce the United States to pay or approve false or fraudulent claims.

82.     The United States paid the false and/or fraudulent claims because of ForeSee Results Inc.'s acts, omissions, and misrepresentations, and incurred damages as a result.

83.     As successor-in-interest to ForeSee Results Inc., Verint Americas Inc. is liable to the United States for all violations of the FCA committed by ForeSee Results Inc.

## COUNT III
### Violation of the False Claims Act:
### 31 U.S.C. § 3729(a)(1)(G)

84.     Relators repeat and re-allege the allegations contained in the forgoing paragraphs as if fully set forth herein.

85.     In violation of 31 U.S.C. § 3729(a)(1)(G), ForeSee Results Inc. knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government. The United States paid the false and/or fraudulent claims because of ForeSee Results Inc.'s acts, omissions, and misrepresentations, and incurred damages as a result.

86.     As successor-in-interest to ForeSee Results Inc., Verint Americas Inc. is liable to the United States for all liability of ForeSee Results Inc.

### Prayer For Relief

WHEREFORE, Relator Plaintiffs, CFI Group USA LLC and American Customer Satisfaction Index LLC, pray for judgment against Verint Americas Inc. as follows:

A.     Finding that Verint, as successor-in-interest to ForeSee Results Inc., is liable under 31 U.S.C. § 3729(a), for each false claim submitted by ForeSee Results Inc.

B.      Ordering Verint to pay, pursuant to 31 U.S.C. § 3729(a), a civil penalty of not less than $5,000 and not more than $11,000, for each violation of the False Claims Act committed by ForeSee Results Inc.

C.      Ordering Verint to pay, pursuant to 31 U.S.C. § 3729(a), three times the amount of all damages sustained by the United States because of ForeSee Results Inc.'s conduct.

D.      Awarding to Relator Plaintiffs the maximum amount allowed pursuant to 31 U.S.C. §3730(d), including reasonable attorneys' fees and costs.

E.      Ordering such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Relator Plaintiffs demands a trial by jury as to all issues so triable.

Respectfully submitted,

/s/ Karl J. Edward Fornell
By:  Karl J. Edward Fornell (P76327)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
(313) 965-8300
KFornell@ClarkHill.com

William D. Cramer (TX 00790527)
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 651-4300
Bill.Cramer@ClarkHillStrasburger.com
*Attorneys for Relator Plaintiffs CFI Group*
*USA LLC and American Customer*
*Satisfaction LLC.*

August 30, 2019